HUNTER and another, Appellants, vs. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent.

*May 4 — May 24, 1898.*

*Highway: Railroad company, liability as to cattle guards: Appeal.*

1. In order to recover for the loss of an animal killed by falling through a trestle bridge on a railroad track, alleged to have been caused by the failure of the railroad company to erect and maintain cattle guards at a highway crossing, as required by sec. 1810, S. & B. Ann. Stats., the plaintiff must prove that a legal highway existed at the point in question across the company's right of way. Evidence showing that an order was once made by the town authorities purporting to lay out such a highway, but that no notice of the pendency of their proceedings was ever given to the company; that no damages were ever offered or paid; and that there was no release of damages, does not establish such a highway.

2. Defects in laying out a highway across the right of way of a railroad company are not cured, under the provisions of sec. 1295, R. S. 1878, by the opening and working of such highway, if within the three years specified in such section the railroad company fences across the same and puts in gates.

3. Where an action against a railroad company for the loss of an animal on its track, alleged to have been caused by its failure to maintain cattle guards at a highway crossing, was tried wholly upon the issue of highway or no highway, the plaintiff cannot, for the first time on appeal, claim to recover on the ground that the defendant failed to fence its track at that point.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This is an action to recover the value of a horse alleged to have been killed by the neglect of the defendant to place cattle guards at a highway crossing. The complaint alleged that there was a highway known as "Eighteenth Street," on the south line of the city of Superior, which ran east and west, and crossed the track and right of way of the defendant substantially at right angles; that the defendant had failed to place cattle guards, as required by law, at the crossing, and that a horse owned by the plaintiffs wandered onto the defendant's track on the 14th of July, 1896, by reason of the absence of cattle guards, and was killed; that notice of the claim for the killing of such horse, as required by ch. 202, Laws of 1893, was served on the company, July 16, 1896. The answer consisted of a general denial.

The evidence upon trial showed that the horse in question belonged to the firm of W. Hunter & Co., and that such firm, at the time of the killing of the horse, was composed of *W. Hunter*, T. P. Hunter, and *S. S. Taylor;* that in the year 1890 a highway was attempted to be laid out by the joint action of the authorities of the city of Superior and the town of Superior upon the south line of the city, which was designed to be a continuation of Eighteenth street; that such highway crossed the track of the defendant company at right angles, the right of way not being fenced (the record of the condemnation proceedings was introduced in evidence, and showed no service of any notice of the proceedings upon the defendant, and no award of damages to the defendant, nor release of damages); that the supposed highway was partially worked and graded by the city authorities up to the railroad track upon both sides, and that the railroad authorities caused planks to be put between the rails of the railroad track at the crossing; that, in the year 1892, the railroad company fenced its right of way, and put sliding gates upon each side of its right of way at this crossing, which gates

have since been maintained, and were in place at the time of the accident, being opened and closed by people who used the highway; that on the 14th of July, 1896, an employee of the firm of W. Hunter & Co. took the horse, and went out into the country upon this highway, across the railroad tracks, through the gates, and went about a mile and a half further east, where he tied the horse to a tree and went to picking blackberries, the country being open and unfenced; that he returned in about an hour and a half, and found the halter broken and the horse gone; that, returning to the crossing, he found the gate partially open, and it appeared by the hoof tracks that the horse had entered upon the right of way, and wandered along northward upon the right of way about eighty rods, to a trestle work across a ravine, which it attempted to cross, and fell down into the ravine and was killed, but was not struck by any train. The proofs show that proper notice was given, as required by ch. 202, Laws of 1893, signed by *W. Hunter* and *S. S. Taylor*. There was evidence that the value of the horse was $95 or $100.

A verdict for the defendant was directed by the court, and from judgment thereon the plaintiffs appeal.

*D. E. Roberts*, for the appellants.

For the respondent there was a brief by *Pope & Perrin*, and oral argument by *Carl C. Pope*.

WINSLOW, J.     Sec. 1810, S. & B. Ann. Stats., requires every railroad company to construct and maintain cattle guards at all highway crossings, and this action was based upon an alleged failure to fulfill that duty. The notice served upon the company previous to the commencement of the action specifies that the absence of a cattle guard at the public highway crossing was the cause of the death of the animal, and the complaint reiterates this statement as the sole ground of liability. No amendment charging any different ground of negligence was made upon the trial nor offered to be made, and thus the case comes to this court.

Upon this proposition it is quite certain that the plaintiffs failed to make a case, because they failed to prove the existence of a highway. It is true that they proved that an order was made by the city and town authorities purporting to lay out a highway at the place in question in 1890, but the proceedings offered in evidence showed affirmatively that no notice of their pendency was ever given to the railway company, and that no damages were ever awarded or paid, and there was no release of damages. Under these circumstances, it cannot be claimed that the supposed highway was ever legally laid out across the defendant's right of way. Nor can it be claimed that the defects were cured so far as that part of the street across the defendant's right of way is concerned by the provisions of sec. 1295, R. S. 1878, which cures defects in the proceedings after a highway has been opened and worked for a term of three years, so far as it has been so opened and worked; because the proof shows affirmatively that within two years the defendant fenced across the supposed highway, and put in gates, which act was clearly a denial of the existence of a highway and stopped the running of the statute. So it cannot be claimed that a highway existed either by force of the condemnation proceedings, or by voluntary dedication, or by the limitation statute just referred to, and it is not perceived how a highway could be created across the defendant's already existing right of way in any other way.

But it is said that, if there was no highway, then the right of way should have been fenced at the point in question, and that a recovery may be had by the plaintiffs by reason of failure to fence, under the provisions of sec. 1810, before cited. With regard to this claim, it is sufficient to say that it certainly cannot be made for the first time in this court. No such ground of liability was claimed, and no issue thereon joined or tried, in the trial court. The whole trial was upon the issue of highway or no highway, and the action cannot,

after reaching this court, be changed into an action to try the question of defective fencing.

Other questions were argued, but, as we regard the question which we have discussed as decisive, it is not necessary to notice them.

. *By the Court.*— Judgment affirmed.